United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) Criminal Case No. 03-80029-CR-Scola |
| | ) |
| Rodney Taylor, Defendant. | ) |

### Order Granting Motion for Reduction of Sentence

  This matter is before the Court on the Defendant Rodney Taylor's motion for a reduction of sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A) and his amended motion following appointment of counsel. (Mot., ECF No. 89; Am. Mot., ECF No. 98.) The Government has responded opposing Taylor's motions (ECF Nos. 93, 100), and Taylor has replied (ECF No. 103). Mr. Taylor also submitted a notice of supplemental authority. (ECF No. 106.) Both parties submitted post-hearing memoranda following the first of two hearings on this matter on March 18, 2024. (ECF Nos. 110, 111.) After two hearings and careful consideration of the parties' written submissions, the record, and the relevant legal authorities, the Court **denies as moot** Taylor's original motion (**ECF No. 89**) and **grants** Mr. Taylor's amended motion for reduction of sentence. (**ECF No. 98**.) The Court reduces Mr. Taylor's sentence to 30 years (360 months), followed by 5 years of supervised release.

1. **Background**

  On February 4, 2004, a jury found Mr. Taylor guilty of unlawfully possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (ECF Nos. 3, 33.) Typically, a statutory maximum sentence of 10 years would have applied to these offenses, but because of three prior state-court convictions, the court found that the Armed Career Criminal Act removed the statutory maximum and sentenced Mr. Taylor to life in prison. The precise basis for Mr. Taylor's ultimate sentence is complex and was vacated once on appeal, but the court sentenced Mr. Taylor to life in prison by cross-referencing Chapter Two, Part A, Subpart 1 (Homicide) pursuant to U.S.S.G. § 2K2.1(c)(1)(B). The cross reference is appropriate where "the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense" and death resulted. U.S.S.G. § 2K2.1(c)(1)(B). The predecessor Court held a lengthy sentencing hearing and found by a preponderance of the evidence that Mr. Taylor used the

firearm charged in the indictment to shoot and kill the victim during the course of a robbery, justifying the application of the homicide guideline. After applying the first-degree murder guideline, Mr. Taylor's base offense level was 43 with a criminal history category of IV, which increased to VI based on his status as an armed career criminal. In the absence of a statutory maximum penalty, the Sentencing Guidelines range for an offense level of 43—regardless of criminal history category—is life imprisonment. Mr. Taylor has now been incarcerated for over 20 years.

Mr. Taylor was never charged in state court with the murder used to justify his life sentence. And the jury who found him guilty of possession of the firearm was presented only evidence that the firearm was later found in an apartment shared by the Defendant and his then-girlfriend. Thus his conviction by a jury was based on his possession of the firearm independent of the commission of the homicide.

Mr. Taylor now moves for a reduction of his sentence based upon extraordinary and compelling reasons, namely that the law has changed since his sentencing such that a mandatory maximum sentence of 10 years (or 15 years based on a 2022 change in the statutory maximum) would apply if he were sentenced today. Life in prison is disproportionate to either of these sentences, according to Mr. Taylor. Additionally, Mr. Taylor argues that his age at the time of his offense and his rehabilitation while incarcerated weigh in favor of his release under the factors set forth in 18 U.S.C. § 3553(a). The Court held hearings on March 18, 2024 and May 13, 2024, in which the parties reiterated their positions.

## 2. Legal Standard

Section 3582 allows the Court to consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A district court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S.S.G. § 1B1.13(a). As detailed in the applicable policy statement, extraordinary and compelling reasons may exist where a defendant has a serious health condition, is elderly, has a family member that depends upon the defendant for care, is a victim of abuse while incarcerated, or in other circumstances of similar gravity to those enumerated. *Id.*

Effective November 1, 2023, extraordinary and compelling reasons may

also exist where "a defendant received an unusually long sentence" due to a subsequent change in the law that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed [now,]" and the defendant has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6). The Court must also find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

Based on this framework, to qualify for compassionate release, the Court must find extraordinary and compelling reasons warrant Taylor's release, that he is not a danger to the community, and consider the factors in 18 U.S.C. § 3553(a). The Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 329 (11th Cir. 2013) (noting defendant has the burden to show circumstances meeting the test for a reduction of sentence).

### 3. Analysis

#### A. Whether Mr. Taylor is eligible for relief

As a preliminary matter, the Government does not dispute that Mr. Taylor has exhausted his administrative remedies as required by § 3582(c)(1)(A). After the Government opposed Mr. Taylor's original motion in part for failure to exhaust administrative remedies, Mr. Taylor sent a request via email and certified mail to the warden at FCI Edgefield (where he is incarcerated) for a motion supporting a reduction of sentence in early December 2023, and the warden confirmed receipt on December 6 and 9, 2023, respectively. (Mot. at 4-5.) Over thirty days have passed since receipt of the request, and Mr. Taylor has therefore satisfied the exhaustion requirement.

Next, the Court considers whether Mr. Taylor is eligible for a sentence reduction consistent with U.S.S.G. § 1B1.13 based on the unusual length of his sentence following an intervening change in the law. The Government argues that Mr. Taylor's life sentence should not be considered an extraordinary and compelling reason for relief, even if it would be substantially shorter if handed down today. According to the Government, the Sentencing Commission exceeded its statutory authority by adding unusually long sentences as a potential extraordinary and compelling reason justifying compassionate release because section 3582(c)(1)(A) does not authorize sentence reductions based on changes in the law. (Resp. at 6-7.)

District courts in several circuits, including ours, have considered this issue in depth, and many have concluded that the Sentencing Commission did not exceed its authority in promulgating U.S.S.G. § 1B1.13(b)(6) to include

"unusually long sentence" as an extraordinary and compelling reason. Quite the opposite, according to these courts, because Congress has explicitly authorized the Commission to "describe what should be considered extraordinary and compelling reasons . . . ." 28 U.S.C. § 994(t).

For example, a court in the Northern District of Florida stated the following on January 30, 2024: "Congress has said rehabilitation alone cannot be an extraordinary and compelling reason for a sentence reduction, but Congress has imposed no other limits on those terms. Neither the Sentencing Commission nor the courts are obligated to read into the statute an exception Congress did not enact. . . . [O]n the meaning of extraordinary and compelling, Congress explicitly delegated primary responsibility to the Sentencing Commission, whose duly enacted policy statement thus is "entitled to more than mere deference or weight." *United States v. Padgett*, No. 5:06CR13-RH, 2024 WL 676767, at *3-4 (N.D. Fla. Jan. 30, 2024) (cleaned up) (citing *Batterton v. Francis*, 432 U.S. 416, 426 (1977)). Another court in the Northern District of Georgia agreed weeks later. *United States v. Allen*, No. 1:09-CR-320-TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024).

Another court further noted the Government's flip-flopping on this issue, finding persuasive "that in choosing to enact U.S.S.G. § 1B1.13(b)(6), the Sentencing Commission 'was influenced by the fact that on several occasions the Department of Justice successfully opposed Supreme Court review of [the circuit split over whether non-retroactive changes in law can be extraordinary and compelling reasons justifying relief] on the ground that [the issue] should be addressed first by the Commission.' *See* Sentencing Guidelines for U.S. Courts, 88 FR 28254-01, 2023 WL 3199918, at *28258 (May 3, 2023) (reviewing circuit split). The government's position in this case contradicts its previous position that the circuit split should be resolved by the Sentencing Commission. Indeed, in issuing this guidance, the Sentencing Commission opined on the circuit split because it typically resolves such disagreements when they relate to its guidelines or policy statements." *United States v. Martinez*, No. 2:01-CR-00564-TC, 2024 WL 866822, at *5 (D. Utah Feb. 29, 2024) (cleaned up).

In 2021, the Eleventh Circuit discussed the Sentencing Commission's authority in detail, stating that "[t]he only boundary the [Sentencing Reform Act] placed on the Commission's definition [of 'extraordinary and compelling reasons'] was that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.' And it required district courts to follow that definition." *United States v. Bryant*, 996 F.3d 1243, 1249 (11th Cir. 2021) (cleaned up). "Because the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons, this Court can accept § 1B1.13(b)(6)'s validity and applicability." *United States v. Allen,* No. 1:09-CR-320-

TCB, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024). The Sentencing Commission therefore has not exceeded its statutory authority by adding this additional category of potential extraordinary and compelling reasons.

The Court next considers whether Mr. Taylor's circumstances fit into the new "unusually-long sentence" category, which reads:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b).

Mr. Taylor has served over 20 years of his sentence, and a change in the law has resulted in a gross disparity between his life sentence and the sentence that would have been imposed for his offense when his motion was filed. Mr. Taylor was sentenced after the court determined that the Armed Career Criminal Act applied to his case, removing the maximum sentence usually accompanying his offense and replacing it with a mandatory *minimum* sentence of 15 years and a maximum sentence of life. *See* 18 U.S.C. § 924(e)(1). The Armed Career Criminal Act applies where a defendant illegally possesses a firearm and has three prior violent felony or serious drug convictions. Mr. Taylor had three prior state convictions at the time of his federal offense, including one Florida conviction for possession of marijuana with intent to sell within 1,000 feet of a school, justifying the application of the Act.

However, the Eleventh Circuit has since held that Florida marijuana convictions are not serious drug offenses that justify enhancements under the Armed Career Criminal Act because of the mismatch between Florida law and federal law. *See United States v. Latson*, No. 19-14934, 2022 WL 3356390, *3 (11th Cir. Aug. 15, 2022) (citing *Said v. U.S. Attorney General*, 28 F.4th 1328, 1330-34 (11th Cir. 2022)). As the Government concedes, federal law excluded "mature stalks" from the controlled substances schedule, while Florida law included "all parts" of the plant. *See* 21 U.S.C. § 802(16) (2001); Fla. Stat. § 893.02(3) (2001). Under this precedent, Mr. Taylor's marijuana-related Florida conviction does not count as an ACCA predicate and Mr. Taylor would not have three eligible predicate offenses if sentenced today.

Therefore, Mr. Taylor would not be considered an armed career criminal and his maximum possible sentence would have been 10 years at the time of his sentencing or 15 years today for his 18 U.S.C. § 922(g) offense, which is significantly disparate from the life sentence that he is serving. *See* 18 U.S.C. § 924(a)(8), *as amended by* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022). Mr. Taylor's sentence is therefore unusually long and an extraordinary and compelling reason for release.

### B. Mr. Taylor's individualized circumstances, including whether he would pose a danger to the community

Although Mr. Taylor is eligible for relief, the Court must still determine whether Mr. Taylor "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and consider Mr. Taylor's individualized circumstances before deciding whether to reduce his sentence. U.S.S.G. § 1B1.13(b)(6). Mr. Taylor argues that he does not pose any danger to others or the community, citing his youth at the time of his offenses and his rehabilitation while incarcerated. Mr. Taylor explains that he has worked hard to better himself while in prison, earning his GED in 2006, taking over 25 educational courses, even teaching classes and Bible study groups, and maintaining employment. (Mot. at 11.) He has had three disciplinary infractions while in prison, but, significantly, none since 2012. (*Id.* at 14.)

While Mr. Taylor's offense involved violence and was incredibly serious, Mr. Taylor had a difficult childhood and was only 20 years old when arrested for the crime for which he is incarcerated. While his youth at the time of the offense is not dispositive, Mr. Taylor does not appear to pose a danger to anyone almost 21 years later. He has never had a violent infraction in prison and appears to have dedicated himself to maturing and improving himself. As a now-41-year-old, he has developed and maintained significant family and community support that he plans to rely on upon release.

Finally, the 3553(a) factors weigh in favor of a reduction of sentence. "Section 3553(a) requires the district court to consider (among other factors) the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *United States v. Monaco*, 832 F. App'x 626, 630 (11th Cir. 2020) (cleaned up). Mr. Taylor has already served over 20 years without credit for gain time and the equivalent of a 296-month (24 years and 7 months) sentence when accounting for gain time. The Bureau of Prisons has assessed him as a low recidivism risk, and Mr. Taylor has a robust

release plan that includes two jobs that he can start as soon as he is released. He has strong support from his family and his community.

The Defendant requested that the Court reduce his sentence to time already served. Upon inquiry, both the Defendant and the Government agreed that if the Court grants a motion for compassionate release, it has the option of reducing the sentence to a lower sentence that is greater than the time already served by the Defendant. The Court finds that a reduced sentence of 30 years is sufficient, but not greater than necessary, to reflect the seriousness of Mr. Taylor's offense, afford adequate deterrence, and protect the public.

For the above reasons, Mr. Taylor has established extraordinary and compelling reasons for his release, that he would not pose a danger to the community, and that the 18 U.S.C. § 3553(a) factors weigh in favor of a reduction of sentence. The Court therefore grants Mr. Taylor's motion and reduces his sentence from life in prison to 30 years in prison, followed by 5 years of supervised release.

### 4. Conclusion

Mr. Taylor's motion for reduction of sentence is **denied as moot** (**ECF No. 89**) and his amended motion for reduction of sentence is **granted**. (**ECF No. 98**.) Mr. Taylor's sentence is reduced to 30 years in prison (360 months), followed by 5 years of supervised release. The standard and special conditions of supervision set forth in the original judgment (ECF No. 45) will remain in place.

**Done and ordered** at Miami, Florida on May 13, 2024.

_____
Robert N. Scola, Jr.
United States District Judge